UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**Brandy Speights,**

*Plaintiff*,

Case Number: _____

v.

Ad Damnum: $2,000 + Atty Fees & Costs

**Rocky Mountain Capital Management, LLC**
and
**David Dwyer,**

**JURY TRIAL DEMANDED**

*Defendants*.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Brandy Speights**, ("**Ms. Speights**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Rocky Mountain Capital Management**, LLC ("**Rocky Mountain**") and **David Dwyer** ("**Dwyer**") (collectively, "**Defendants**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Ms. Speights against the Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**") and the Florida Consumer Collection Practices Act, Section 559.55, Florida Statutes *et. seq*. ("**FCCPA**").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction for Plaintiff's FDCPA claims arises under the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C § 1331.

3. Supplemental jurisdiction arises for Plaintiff's state law claims under 28 U.S.C. § 1367.

4. The Defendants are subject to the provisions of the FDCPA and the FCCPA, and are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and Section 48.193, Florida Statutes.

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendants therein.

## PARTIES

6. **Ms. Speights** is a natural person residing in Polk County, Florida and is a "consumer" as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

7. **Rocky Mountain** is a Delaware limited liability company with a primary business address of 3829 Forest Parkway, Suite 200, North Tonawanda, NY 14120.

8. Rocky Mountain is registered to conduct business in the state of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9. **Dwyer** is a natural person believed to reside in the Erie County, New York area. On information and belief, he can be served at his business address: **3829 Forest Parkway, Suite 200, North Tonawanda, NY 14120**.

10. Dwyer is the *Managing Member* of Rocky Mountain, is involved in the day-to-day operations of Rocky Mountain, and, on information and belief, is the sole person

responsible for determining the method and processes by which Rocky Mountain collects debts.

11. The Defendants are "debt collectors" within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that they use postal mail or other instrumentality of commerce, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts. Alternatively, they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. At the time of events complained of herein, Rocky Mountain was not registered with the Florida Office of Financial Regulation as a Consumer Collection Agency ("**CCA**"), despite attempting to collect debts in the state of Florida.

## FACTUAL ALLEGATIONS

### The Alleged Debt

13. On or around April 22, 2016, Ms. Speights supposedly obtained a payday loan (the "**Debt**") from an internet-based payday loan company owned and operated by Plain Green, LLC ("**Plain Green**").

14. Ms. Speights allegedly obtained the loan in Polk County, Florida.

15. The Debt arose from personal needs which were primarily for family, personal, and household purposes, specifically a payday loan for personal purposes, and meets the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

16. Plain Green was an online lender that offered loans with interest rates in excess of 400 percent per annum.

17. Plain Green was never licensed by the Florida Office of Financial Regulation to act as a payday lender and was not a federally-chartered bank.

18. On December 11, 2017 Plain Green's website, www.plaingreenloans.com/faq.aspx, showed that a borrower would be charged 413% for a loan of $700, to be paid in 24 bi-weekly payments.

19. The original balance of the loan from Plain Green was purported to be $800.

20. In September 2016, less than five months after allegedly initiating the loan, Plain Green claimed that the balance, after interest, was $2,177.

21. Plain Green thus charged an effective annual interest rate for the loan in excess of 600%.

22. Pursuant to Section 687.02(1), Florida Statutes, all contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatsoever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest, are usurious and violate Florida law.

23. Pursuant to Section 687.071(3), Florida Statutes, unless otherwise specifically allowed, any person making an extension of credit to any person, who willfully and knowingly charges, takes, or receives interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, commits a felony of the third degree.

24. Pursuant to Section 687.071(7), Florida Statutes, no loan made in violation of this statute is an enforceable debt in Florida.

25. As the Debt resulted from a loan which violates Section 687, Florida Statutes, the Debt is unenforceable in the State of Florida.

**Efforts to Collect the Alleged Debt**

26. Ms. Speights received calls from several different debt collectors throughout 2018, each of which claimed to be the rightful owner of the Plain Green account.

27. On or around December 26, 2018, Ms. Speights viewed her Trans Union consumer disclosure, which indicated that Rocky Mountain had purchased the Debt.

28. Ms. Speights then called Rocky Mountain.

29. Rocky Mountain did not answer and Ms. Speights did not leave a message.

30. Rocky Mountain returned her call shortly thereafter.

31. Rocky Mountain's call was the "initial communication" with Ms. Speights regarding the Debt.

32. Ms. Speights stated that she reviewed her Trans Union credit history and learned that Rocky Mountain had purchased the "debt" owed to Plain Green.

33. Rocky Mountain's agent stated that Ms. Speights owed $2,177 regarding the Plain Green "debt."

34. At no point did Rocky Mountain's agent disclose to Ms. Speights that the loan was unenforceable against her in Florida.

35. To the contrary, Rocky Mountain's agent specifically stated that the Debt was enforceable.

36. The failure to disclose that a debt is legally unenforceable is materially misleading to an unsophisticated consumer. *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 425, 428-30 (3d Cir. 2018); *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 684, 687 (7th Cir. 2017*); Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 395, 399-400 (6th Cir. 2015); and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).

37. Rocky Mountain had no legal right to attempt to collect a debt from Ms. Speights which it knew, or should have known, was unenforceable against her.

38. Rocky Mountain's agent gave her a toll-free number to an entity called National Check Resolution ("**NCS**"), and said that Rocky Mountain had outsourced collection of the debt to NCS, and that Ms. Speights should call NCS at 877-348-3599.

39. At no point in the call did Rocky Mountain's agent state that she was a debt collector or that the communication was from a debt collector.

40. Rocky Mountain's agent similarly failed to disclose that the phone call was an attempt to collect the Debt and that any information obtained would be used for that purpose.

41. Rocky Mountain never mailed any written correspondence to Ms. Speights with: 1) the amount of the debt; 2) the name of the creditor to whom the debt is owed; 3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the

debt collector; 4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or, 5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

42. Rocky Mountain is located in the State of New York and a significant portion of its business operations are conducted in and around the Buffalo, New York area.

43. New York state law prohibits payday lending, or short-term loans which mimic payday loans; making loans, or receiving payment on loans, for which the interest rate exceeds 25% annually, is considered criminal usury and rates higher than 16% annually is considered civil usury. See N.Y.C.R.R. § 4.3. 3 N.Y.C.R.R. § 4.2

44. The website of the Department of Financial Services for the State of New York, at https://www.dfs.ny.gov/consumer/dangerousloans.htm, states:

> **Payday lending is illegal in New York for a number of reasons:**
>
> Payday loans are designed to trap borrowers in debt. Due to the short term, most borrowers cannot afford to both repay the loan and pay their other important expenses.
>
> If the loan cannot be paid back in full at the end of the term, it has to be renewed, extended, or another loan taken out to cover the first loan. Fees are charged for each transaction.
>
> The annual percentage rates on payday loans are extremely high, typically around 400% or higher.

> Lenders ask that borrowers agree to pre-authorized electronic withdrawals from a bank account, then make withdrawals that do not cover the full payment or that cover interest while leaving principal untouched.
>
> If the lender deposits a repayment check and there are insufficient funds in the borrower's account, the borrower is hit with even more fees for insufficient funds.

45. Thus, under the law of its own state, the loan Rocky Mountain was seeking to collect was illegal.

46. Rocky Mountain has been sued in the past by consumers for its attempts to collect payday loans purchased from Plain Green, and thus knows that these loans are unenforceable and usurious in the state of Florida.

47. Despite knowing that it was illegal to collect unenforceable, usurious payday loans, Dwyer, as Managing Member of Rocky Mountain, continued to purchase charged-off accounts from Plain Green and continued to accept new illegal payday loans for collection.

48. As the *Managing Member* of Rocky Mountain, Dwyer had a duty to refuse to collect debts that he knew or should have known were invalid and to instruct his agents to collect debts lawfully.

49. Contrary to these duties, Dwyer authorized the collection of debts arising from usurious loans through the use of the misleading and abusive tactics described herein.

50. Rocky Mountain and Dwyer are jointly and severally liable for their violations of the aforementioned statutes.

51. The Defendants phone calls to Ms. Speights were "communications" as defined by 15 U.S.C. § 1692a(2) and Section 559.55(2), Florida Statutes.

52. Ms. Speights has hired the aforementioned law firm to represent her in this matter and has assigned her rights to legal fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

53. Ms. Speights adopts and incorporates paragraphs 1 – 52 as if fully restated herein.

54. The Defendants violated **15 U.S.C. § 1692e** and **1692e(10)** in that Rocky Mountain used false, deceptive, and misleading representations in connection with the collection of a debt by:

   a. falsely representing that the Debt was legally enforceable against Ms. Speights when it was usurious and unenforceable in Florida, as well as New York, the state of Rocky Mountain's principal business address;

   b. implying that Rocky Mountain had the legal ability to collect the Debt, when they did not, as Rocky Mountain had no valid Florida CCA license;

   c. failing to disclose in collection attempts that the Debt was legally unenforceable and that Ms. Speights could not be sued for the Debt;

   d. failing to disclose that their communication was from a debt collector.

55. The Defendants violated **15 U.S.C. § 1692e(2)(a)** by falsely representing the character, amount and legal status of a debt by claiming that:

   a. the Debt was legally enforceable when it was usurious and unenforceable in Florida; and,

    b. Rocky Mountain had the legal ability to collect the Debt, when they lacked a valid Florida CCA license and thus could not collect consumer debts in Florida.

56. The Defendants violated **15 U.S.C. § 1692e(5)** in that Rocky Mountain threatened action which could not legally be taken, specifically, the collection of a debt that was illegal and unenforceable in Florida as well as New York.

57. The Defendants violated **15 U.S.C. § 1692e(11)** when Rocky Mountain, acting by and through its agent, failed in its initial communication with Ms. Speights to identify as a debt collector and failed to disclose that the call was an attempt to collect the debt and that any information obtained would be used for such purpose.

58. The Defendants violated **15 U.S.C. § 1692f** when they used unfair and unconscionable means to collect a debt when they knowingly purchased debts to collect which they knew were illegal and unenforceable in both their home state as well Florida, and then attempted to collect $2,177 from Ms. Speights.

59. The Defendants violated **15 U.S.C. § 1692g(a)** when they failed to mail written notice to Ms. Speights, stating:

    a. the amount of the Debt;

    b. the name of the creditor to whom the Debt is owed;

    c. a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector;

      d. a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and,

      e. a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

60. Rocky Mountain's agent's actions were willful and intentional and were made pursuant to policies authorized by Dwyer.

61. Dwyer is the managing member of Rocky Mountain and the sole person responsible for its policies and procedures resulting in the aforementioned conduct.

62. Dwyer is thus jointly and severally liable for the above-stated violations.

**WHEREFORE**, Ms. Speights respectfully requests this Honorable Court enter judgment against Rocky Mountain and Dwyer, jointly and severally for:

      a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

      b. Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

      c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

      d. Such other relief that this Court deems just and proper.

## COUNT II
## <u>VIOLATIONS OF THE FCCPA</u>

63. Ms. Speights adopts and incorporates paragraphs 1 - 52 as if fully restated herein.

64. The Defendants violated Section **559.72(9)**, Florida Statutes, when Rocky Mountain attempted to enforce a debt against Ms. Speights that it knew, or should have known, was illegitimate and unenforceable due to the application of an illegally-high interest rate on the principal amount of the Debt.

65. Dwyer is the managing member of Rocky Mountain and the sole person responsible for its policies and procedures resulting in the aforementioned conduct.

66. Dwyer is thus jointly and severally liable for the above-stated violations.

**WHEREFORE,** Ms. Speights respectfully requests this Honorable Court enter judgment against Rocky Mountain and Dwyer, jointly and severally, and otherwise solely, for:

   a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

   b. Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

   c. Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Ms. Speights pursuant to Section 559.77(2), Florida Statutes;

   d. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

   e. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Speights demands a jury trial on all issues so triable.

Respectfully submitted on March 18, 2019, by:

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
FBN: 119168

**SERAPH LEGAL, P. A.**
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
(813) 567-1230
BGeiger@seraphlegal.com
Counsel for Plaintiff